# EXHIBIT "1"
# THE 2011 SUPPLY AGREEMENT

**THIS AGREEMENT CONTAINS BINDING ARBITRATION PROVISIONS**

### AGREEMENT

This Agreement ("Agreement") is executed by and between Mast Powertrain, LLC ("Mast"), and Power Solutions, Inc. ("PSI"). The terms and conditions of this Agreement are supported by good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged.

### Introduction

PSI manufactures an 8.8L engine assembly used in power generators, trucks, buses, boats, and other equipment. Mast has been asked to manufacture aluminum intake manifolds ("Manifolds") as set forth in Exhibit "A" to use in the 8.8L engine assembly. The purpose of this Agreement is to set forth the terms and conditions whereby Mast will manufacture and supply, and PSI will purchase, Manifolds from Mast. The use of the word "Manifolds" applies only to the specifications described in Exhibit "A".

### Terms and Conditions

Mast and PSI do hereby agree and contract as follows:

1. For a period of sixty calendar months from the beginning of the production period, as defined in paragraph 3 in this Agreement (the "Production Period"), and subject to certain terms and conditions as set forth in later paragraphs of this Agreement, Mast will manufacture and supply PSI with Manifolds manufactured from 356 aluminum alloy, with T6 heat treatment. Each twelve-month period starting with the Production Period (including any extension of this Agreement) will be a "Contract Year." Mast will sell the Manifolds as defined in Exhibit "A" exclusively to PSI during the Production Period. During the Production Period, and for a period of one year thereafter, Mast will not sell Manifolds which are competitive with or a substitute for the Manifolds to any other party for use with 8.8L or comparable engines in the following markets: industrial (i.e., off-highway) equipment, trucks, buses, recreational vehicle or recreational marine (excluding high performance). However, Mast may sell

6606184 2 04/26/11

manifolds that are materially similar to Manifolds unless they comply with the specifications for Manifolds as defined in Exhibit "A".

2. Within ninety-eight calendar days from the execution date of this Agreement, Mast will furnish PSI with ten Manifolds for evaluation and testing. Within thirty calendar days from the date that PSI receives the ten Manifolds for evaluation and testing, PSI will notify Mast of the test results. If the test results are unsatisfactory, PSI shall advise Mast as to what changes are required, and Mast shall have fifteen calendar days to attempt to make the required changes, and to resubmit the Manifolds a second time for evaluation and testing. If Mast cannot timely make the required changes, this Agreement may be terminated by PSI; or, if PSI, in its discretion, wishes to give Mast more time to comply, PSI may do so and keep this Agreement in effect. However, if the test results are satisfactory – either on the first or second submission – then this Agreement shall continue as set forth below.

3. Within thirty days of receiving approval from PSI of the evaluation and test results, the Production Period of this Agreement shall begin and Mast will begin producing Manifolds for PSI in compliance with the attached specifications. Mast will vacuum test each Manifold for quality assurance and will take other commercially reasonable quality assurance steps as defined in paragraph 17 prior to shipping.

4. PSI will provide Mast with a ninety day firm release schedule specifying the number of Manifolds to be released in each calendar month. The minimum number of Manifolds that must be ordered by PSI during each Contract Year is three thousand in order to completely amortize the tooling costs to be incurred by Mast. **Therefore, if PSI orders less than 3,000 Manifolds in a Contract Year, it shall pay to Mast $7.00 for each Manifold not ordered** under the required minimum amount if the tooling has not already been fully amortized. The parties acknowledge and agree that Mast has paid for the tooling, but the tooling is being amortized by PSI in the price for the first **15,000 Manifolds and minimum payments.** Once 15,000 Manifolds are purchased by PSI and/or the $7.00 "minimum payments" are made for 15,000 Manifolds, the price for

6606184_2 04/26/11

Manifolds after such purchase will be reduced by $7.00 per Manifold to reflect that the tooling, etc. for the Manifolds have been fully amortized. If PSI orders more than 3,000 Manifolds in a Contract Year, the number ordered over 3,000 will be carried forward to the next Contract Year for purposes of determining whether the minimum purchase has been satisfied for the next Contract Year and succeeding Contract Years.

5.   The price to be paid by PSI for each Manifold is **$258.47** (Two Hundred and Fifty-One Dollars and forty-seven cents). Payment terms are Net thirty days from shipment date. During the term of this Agreement, the price for each Manifold may be adjusted for only one reason. The one reason is that the price of the aluminum material purchased by Mast from its sub-suppliers increases or decreases by ten percent or more in price that Mast pays at the inception of this Agreement. This means that Mast will only be passing on its increased or decreased cost of the purchase of aluminum to PSI, and for no other reason. If there is a difference of opinion between Mast and PSI concerning the price change, after reasonable good faith attempts to negotiate a solution, the matter shall be settled by Binding Arbitration as set forth in the last number paragraph of this Agreement, and shipments shall continue during the Arbitration proceeding. The price for the Product shall include all sales, VAT(adjusted for discount), use, excise, privilege, payroll, occupational, import and export duties and other taxes applicable to the sale of Product to PSI hereunder. Mast will indemnify PSI against any liability and expense by reason of Mast's failure to remit the same to the proper taxing authority. Mast warrants that prices are complete, and that no additional charges of any type will be added without PSI's express written consent.

6.   If PSI receives a Manifold that does not meet specifications as set forth in the attachment, then PSI will return the unused Manifold to Mast within thirty calendar days after receipt by PSI, and PSI shall specify why the Manifold does not meet specifications. Upon receipt of the non-conforming Manifold together with the explanation from PSI, Mast shall, within fifteen calendar days, send PSI a replacement Manifold. If the Manifold does not comply with the specifications, Mast shall bear the

6606184_2 04/26/11

cost of shipment and reimburse PSI for any shipping expense incurred by PSI. Mast agrees to notify PSI immediately in the event Mast becomes aware that it may not be able to deliver Manifolds that conform to specifications and to provide a plan of action to correct any non-conformance. If Mast is unable to produce or deliver conforming Manifolds within the times specified in this contract, then PSI may terminate this agreement in accordance for default. Notwithstanding any notice that Mast may give to PSI regarding non-conforming Manifolds, Mast shall still comply with its obligations for the manufacture and timely delivery of the Manifolds, and all terms and conditions of warranty, delivery, timeliness, and indemnification shall remain in full force and effect. Mast will not be liable to PSI for delays or failure in manufacturing and/or shipping Manifolds, when such delays or failures are occasioned by war, strikes, riots, fire, flood, explosion, sabotage, action of any governmental authority, or any other cause beyond Mast's reasonable control ("Force Majeure Event"). Mast shall promptly inform PSI of a Force Majeure Event and detail its plans to fulfill or comply with PSI's Purchase Order. PSI, in its sole discretion, may terminate all or part of any Purchase Order without liability to Mast, in the event that the Purchase Orders cannot be fulfilled or completed when originally scheduled.

7.      The parties acknowledge and agree that PSI will initially own all components of tooling, fixtures and other intellectual property, including drawings for the Manifolds (collectively "Tooling") but that PSI has an obligation to pay for the Tooling through amortization in the price of the Manifolds or as otherwise set forth in this Agreement on termination. The payment obligation from PSI to Mast shall be terminated at the earlier of completion of the amortization of the 15,000 units or in the final payment for the Tooling upon the termination of the agreement as defined in paragraph 10. During the term of this Agreement, Mast will maintain the tooling and fixtures at its expense. Mast shall establish a management and maintenance plan, establish a tool record, keep tooling and fixtures identified and safely stored. Mast shall monitor the life of all tooling and fixtures and notify PSI one hundred and twenty days prior to the expiration of their

6606184_2 04/26/11

lifetime. This notification period is intended to give the parties time to purchase, build, test, run samples, and validate prior to implementation of a new tool or fixture by Mast.

8.  The parties acknowledge and agree that they have executed and delivered the Confidentiality Agreement in the form of Exhibit "B" attached hereto. Such Agreement will remain in full force and effect in accordance with its terms.

9.  Neither party shall acquire any right, title or interest in any of the trademarks, trade names or other intellectual property rights of the other party by virtue of this Agreement. Neither party shall use or in any way refer to the other party's trademarks, trade names or other intellectual property rights, except that PSI may refer to Mast as its vendor where it deems necessary. The parties acknowledge that PSI will own all intellectual property rights, including drawings and specifications related to the Manifolds.

10. The term of this Agreement will commence on the date hereof and will continue in full force and effect during the Production Period. This Agreement will renew automatically for period(s) of one year unless one party gives the other party at least one hundred and eighty days' notice prior to the expiration date of the Agreement, or any renewal period. Notwithstanding the foregoing, a party may terminate this Agreement if the other party has breached this Agreement and the breaching party has failed to cure the breach within ninety days of written notice of the breach. On termination of this Agreement for any reason, PSI shall have the right to take delivery from Mast, and Mast shall deliver to PSI or any successor or assign, the intellectual property with respect to the Manifolds, as well as Tooling. On termination of this Agreement for any reason (other than under paragraph 2), PSI shall pay to Mast any unamortized tooling cost calculated at the rate of $7.00 multiplied by 15,000 Manifolds less the number of Manifolds purchased by PSI prior to termination of this Agreement.

11. This Agreement constitutes the entire agreement between the parties with respect to the subject matter here. It supersedes all other agreements whether oral or in writing. This Agreement shall be governed by and construed in accordance with the

6606184_2 04/26/11

laws of the State of Illinois. Neither party may assign its rights or obligations under this Agreement without the consent of the other party. Specifically, Mast may not assign its obligation to manufacture the Manifolds to any third party without the prior written consent of PSI. This Agreement may be amended solely in a written agreement signed by each of the parties.

12. Once the tooling has been accepted by PSI, PSI may request in writing that Mast make an engineering/specification change to the Manifolds and/or the manufacturing processes. Mast will review any such request for an engineering change and will advise PSI in writing of the estimated costs being incurred by Mast in implementing such engineering change. If PSI and Mast agree on any engineering change and the associated costs, this Agreement shall be set forth in writing, signed by both parties and incorporated as an amendment to this Agreement. Mast may also request in writing that Mast make an engineering/specification change to the Manifolds and/or the manufacturing processes. An engineering/specification change includes, but is not limited to, changes of source of material and parts, changes in manufacturing processes, test procedures, manufacturing locations, relocation or replacement of equipment and any similar changes that are anticipated by sub-suppliers or subcontractors. An engineering/specification change must include Mast's affected part number of the Manifold, date of implementation, reason for the change, specific details of the change and supporting data that demonstrates that Manifolds reliability has not been negatively impacted. Any change notice must be sent to PSI a minimum of ninety calendar days in advance of the proposed implementation date. PSI then has fifteen business days to respond to Mast with approval or disapproval of the change, or a request for samples for evaluation by PSI. If the change is rejected by PSI within the 15 day period, it will not be implemented by Mast until the reason for rejection can be resolved.

13. PSI shall select the mode of transportation, routing and carrier for all Manifolds delivered hereunder. If PSI does not provide Mast with shipping instructions, then Mast

6606184_2 04/26/11

shall select the motor transportation for Manifolds to be delivered hereunder. All Manifolds will be delivered to PSI at the place PSI designates in writing **FOB** Mast's manufacturing facility in Nacogdoches, Texas. Mast will pack and mark Manifolds and make shipments in accordance with PSI's transportation instructions, including, but not limited to, mode of transportation, utilization of assigned carrier and identification of the shipping point. Each packing slip and bill of lading will bear the applicable Purchase Order number and the location of the site to which the Manifold is to be shipped Mast will be responsible for all excess costs incurred due to its failure to comply with such instructions and any damage and deterioration of the Manifolds in shipment. All invoices must bear the applicable Purchase Order number

14. Mast shall provide technical support as may be reasonably requested from time to time by PSI, on its own behalf, or on behalf of its customers.

15. Mast warrants that Manifolds supplied under this Agreement will be free from defects in material and workmanship and quality consistent with specifications in Exhibit "A". Mast shall extend to PSI any and all warranties received from Mast's sub-suppliers and subcontractors and agrees to enforce such warranties on PSI's behalf. All of Mast's warranties shall run collectively and separately to PSI, its successors, assigns, customers, agents, and representatives. The above warranties are in addition to any warranties implied by law or otherwise made by Mast and shall survive acceptance and payment by PSI.

16. Mast agrees to indemnify and hold PSI harmless from and against any and all liability, cause, damages and expenses, including reasonable attorneys' fees occasioned by claims or suits for losses or damages arising out of the defective design for the Manifolds to the extent provided by Mast, as well as for any infringement of the Manifolds as designed by Mast of any patents or other intellectual property rights of any third party; provided, however, Mast shall have no obligation to indemnify PSI to the extent PSI has modified the Manifolds after delivery to PSI.

6606184 2 04/26/11

17. Mast shall maintain a documented quality system that includes the generation and control of quality documents and manufacturing processes, validation of special or automated process, control of suppliers, calibration and control of test equipment, handling of defective material, control of corrective action processes, and implementation of statistical process control of suppliers, calibration and control of test equipment, handling of defective material, control of corrective action processes, and implementation of statistical process control. The ISO 9001:2000 Standards should be referenced as examples of Quality Systems structure and discipline. PSI may audit Mast's quality system at periodic intervals upon prior written notification. Mast will grant PSI access to all operational facilities, test centers, warehouses and inspection of quality related documents. Mast may impose appropriate restrictions on PSI to safeguard Mast's intellectual property and business secrets. PSI will inform Mast of the results of all audits. If, in the view of PSI, corrective action is required, Mast should implement reasonable corrective actions within a reasonable time period and inform PSI about the results. Mast will carry out incoming inspection for material to ensure Manifolds meet specifications set forth on Exhibit "A". Inspections shall include RoHS test if required. Mast will maintain and calibrate any inspection equipment and tools utilized to carry out inspection of Manifolds. Mast shall document inspections and will inform PSI of the results. Mast shall maintain clear, clean, and accurate documents or results of acceptance activities for Manifolds delivered to PSI. These documents shall include the inspection or criteria, activities performed, dates of test and inspections, and results. All record retained for the Manifolds shall be stored by Must until PSI requests the records. PSI may also request periodic, joint quality assurance meetings at Mast's facility to update the status of product quality and reliability.

18. Mast represents, warrants, certifies and covenants that Mast shall fully comply with all applicable laws, rules, regulations and ordinances (collectively, "Laws") in the performance of this Agreement. Including, but not limited to all applicable Import/Export laws, rules, regulations and requirements. If the Manifolds are

6606184 2 04/26/11

manufactured in a country in which goods are delivered to PSI, Mast will mark the Manifolds "Made in (country of origin)". Upon PSI's request, Mast shall promptly furnish any reports, required information, and/or certifications required under such Laws. Mast represents, warrants, certifies and covenants that the Manifolds fully comply with all applicable laws, rules, regulations and ordinances, including all environmental laws in locations in which the Product is likely to be used or sold (collectively, "Laws") and shall provide for Manifolds, upon request, all reports and required information including, but not limited to, certifications, component natural resources, as required under such Laws. Mast shall maintain and retain sufficient documentation to enable the country of origin of Manifolds to be traced within the Manifolds sold to PSI. Mast represents, warrants, certifies and covenants that Manifolds, including its composition and packages, have and will comply with labor laws and have not and will not be produced or supplied (by Mast or its suppliers) in segregated facilities or any location in which segregated facilities are maintained; by using forced, indentured, convict or child labor; in violation of minimum wage, hour of service or overtime laws of the country of manufacture or in any jurisdiction in which Manifolds or services are provided; are in compliance with any domestic or international laws and directives applicable to the Product and as amended at the time of any Purchase Order including, but not limited to, any applicable directives concerning the restriction of hazardous substances (RoHS), unless expressly agreed in writing by PSI.

19. Mast and PSI agree that any default, dispute or interpretation question involving this Agreement shall be settled by Binding Arbitration rather than litigation; therefore, if any question of default, interpretation or dispute arises between the Parties with respect to this Agreement, the parties agree to submit to binding arbitration in Wood Dale, Illinois. The procedure shall be as follows: the party requesting arbitration shall submit the matter to the other party in writing. Within ten days of the receipt of the submission, each party shall select one arbitrator. Within ten days of their selection, the two arbitrators so selected shall select a third arbitrator. Should a party fail or

6606184_2 04/26/11

refuse to select an arbitrator, the arbitrators that have been appointed shall select an arbitrator. The three arbitrators shall consider the matter within thirty days of the selection of the third arbitrator and shall, within ten days of the last day of the arbitration proceeding, render a decision which shall be final, binding and conclusive on both parties; and enforceable in a court of competent jurisdiction. Any decision by the arbitrators shall be by a majority vote. The arbitrators shall establish the rules of procedure and evidence that must be followed by the parties with respect to the arbitration, but shall do so with the goal of resolving the matter as quickly and efficiently as possible. The arbitrators may select legal counsel to advise them in matters concerning the arbitration. The arbitrators may elect to conduct the arbitration by telephone in order to save expense. The losing party shall pay for all costs attributable to the arbitration. If neither party's position is fully upheld by the arbitrators, each party shall pay one-half of the expense of the arbitration.

Witness our hands this 28th day of April, 2011.

Mast Powertrain, LLC

*Horace Mast*
Manager/President

Power Solutions, Inc

[signature]
General Manager/Authorized Officer

6606184 2 04/26/11

## Exhibit "A"

**[drawings]**

1) Intake manifold shall be cast from 356 aluminum with T6 heat treatment.
2) Each intake manifold must pass a vacuum test to ensure the castings do not leak.
3) Each intake manifold must be delivered in finish machined form in a condition suitable for PSI's 8.8L Engine Assembly.
4) Drawings:   33500906 – Casting, 8800 Intake
              33500907 – Manifold, 8800 Intake
5] Finished Machine Part will be PSI Part #33500907 Manifold, 8800 Intake.
   A.   Casting Tools to produce Casting #33500906: Semi permanent mold tooling. Single cavity per mold with shell core boxes AND
   B.   Machine tool holding fixtures (2) to Machine PSI Part #33500906, Casting, 8800 Intake into PSI #33500907

6006184_2 04/26/11